IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER BLAKE CARRION, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-369-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Christopher Blake Carrion requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 4, 1991, and was twenty years old at the time of the administrative hearing (Tr. 45, 47, 106). He has an eighth grade education and reported no past work (Tr. 47, 119). The claimant alleges that he has been unable to work since July 30, 2009, due to bipolar disorder and posttraumatic stress disorder (Tr. 119).

## Procedural History

On September 15, 2009, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 13, 2012 (Tr. 28-35). On November 14, 2012, the ALJ issued an Amended Decision and determined that the claimant was not disabled through June 30, 2011, but became disabled on July 1, 2011 (Tr. 16-24). The Appeals Council denied review, so the ALJ's amended opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps two and three of the sequential evaluation. He found that the claimant's mental impairments, including his substance abuse disorders, met Listings 12.04, 12.06, and 12.09 found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). However, when the ALJ continued with his inquiry by factoring out substance

abuse, he found the claimant had no remaining severe impairments through June 30, 2011(Tr. 20). The ALJ concluded that drug and alcohol abuse (DAA) was material to the determination of disability through June 30, 2011, and not material beginning on July 1, 2011; thus, he found the claimant disabled beginning July 1, 2011 (Tr. 20).

**Review**

The claimant contends that the ALJ erred by failing to properly analyze the materiality of his substance abuse. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly analyze the materiality of his substance abuse, and the decision of the Commissioner must therefore be reversed.

The ALJ found that beginning on July 1, 2011, the claimant's affective disorders, anxiety-related disorders, and substance addiction disorders were severe impairments that met Listings 12.04, 12.06, and 12.09; however, the ALJ further found that in the absence of substance abuse, the claimant's remaining affective disorders and anxiety-related disorders were not severe through June 30, 2011 (Tr. 19-20). The relevant medical evidence reveals that the claimant received inpatient mental health treatment on six separate occasions, and most of these inpatient treatments required ongoing medication management (Tr. 195-247, 249-324, 329-59, 482-710, 714-25, 760-87). The claimant received residential treatment at Shadow Mountain Behavioral Health System from April 12, 2006, through May 12, 2006, due to depressive symptoms and a suicide attempt (Tr. 195-247). At admission, Dr. Michelle Hubner assigned a Global Assessment of Functioning (GAF) score of 25 and upon discharge, Dr. Joe Speer diagnosed the claimant with depressive disorder, not otherwise specified; cannabis abuse; and a GAF score of 40

(Tr. 205-08, 242-44). The claimant was next treated at Parkside Psychiatric Hospital from July 24, 2007, through August 13, 2007, after multiple suicidal threats (Tr. 249-324). Dr. Virginia Heller assigned a GAF score of 30 at admission and noted the claimant's prognosis was poor (Tr. 253-54). A urine drug screen test performed on August 5, 2007 was positive for cannabis (Tr. 283). Upon discharge, Dr. John White diagnosed the claimant with major depression; chronic dysthymia; conduct disorder not otherwise specified; polysubstance dependence; alcohol, amphetamine, and cannabis abuse; intermittent explosive disorder; learning disorder not otherwise specified; and antisocial personality disorder (Tr. 251). He assigned a GAF score of 36, and noted the claimant's prognosis was fair (Tr. 252). The claimant then participated in the residential substance abuse program at the Norman Adolescent Center from December 12, 2007, through March 12, 2008 (Tr. 329-59). Next, he was treated at Cedar Ridge Psychiatric Hospital from July 23, 2009, through July 30, 2009, for stabilization from increased depression with suicidal ideation, self-harm behavior, and drug use (Tr. 482-710). A urinalysis conducted on admission was positive for amphetamine, methamphetamine, and marijuana (Tr. 521). During his hospitalization at Cedar Ridge, an EEG of the claimant's brain resulted in a diagnosis of Complex Partial Seizure Disorder of Limbic Origin and Attention Deficit Disorder by Dr. Daniel T. Matthews (Tr. 527-28). Dr. Rebecca Feliciano assigned a GAF score of 30 on admission and 45 upon discharge (Tr. 491, 484). On the claimant's discharge summary, Dr. Feliciano diagnosed him with bipolar disorder; posttraumatic stress disorder; and polysubstance, alcohol, marijuana, opiates, cocaine, amphetamines, methamphetamine, and other dependence, in early remission due to

institutionalization (Tr. 484). The claimant's next hospitalization was at Rolling Hills Hospital from October 29, 2009, through November 6, 2009, for detoxification (Tr. 714-25). At discharge, Dr. Everett Bayne diagnosed the claimant with bipolar disorder, intermittent explosive disorder, opioid dependence, posttraumatic stress disorder, attention deficit disorder, cannabis/marijuana dependence, amphetamine or other psychostimulant dependence, cocaine dependence, alcohol abuse, localization-related epilepsy and epileptic syndrome with complex partial seizures, psychophysical visual disturbances, and history of noncompliance with medical treatment (Tr. 716). Dr. Bayne assigned a GAF score of 35 both at admission and upon discharge (Tr. 717, 720). The claimant's final inpatient hospitalization was an emergency detention at Carl Albert Community Mental Health Center from May 9, 2010, through May 17, 2010, after the claimant's mother found him with a knife to his throat (Tr. 760-87). Lab tests were positive for amphetamine, methamphetamine, benzodiazepines, marijuana, and propoxyphene (Tr. 782-83). Cindy Baugh, an advanced practice nurse, assigned the claimant a GAF score of 28 at admission and 55 upon discharge (Tr. 769, 773). Ms. Baugh's final diagnoses included posttraumatic stress disorder; major depression, recurrent, moderate; polysubstance dependence; antisocial traits; and seizure disorder (Tr. 769). She noted the claimant's prognosis was guardedly optimistic, depending on follow-up care and compliance (Tr. 769).

On March 5, 2008, Dr. Raymond McCaffrey performed a psychological evaluation of the claimant to determine if he met the criteria for participation in the Youthful Offenders Program (Tr. 325-28). The claimant reported to Dr. McCaffrey that

drugs and alcohol played a major role in his illegal behavior and in his multiple suicide attempts (Tr. 326). Dr. McCaffrey administered the Slosson Intelligence Test and interpreted the results to indicate an intelligence quotient of 72, noting the possibility that this was an underestimation of the claimant's true intellectual potential (Tr. 326). He found significant indicators of both situational and major depression and opined that the claimant's significant drug use was an attempt to assuage his depression, which temporarily reduces his pain, but ultimately heightens the effects of his depression and compounds the problems he faces (Tr. 327). Dr. McCaffrey also stated the claimant's judgment and reasoning were significantly lowered and that he was immature (Tr. 327).

Dr. Todd Graybill conducted a psychological consultative examination of the claimant on February 10, 2010 (Tr. 732-33). He found that the claimant was functioning in the low average range intellectually, but was able to understand, retain, and follow simple instructions (Tr. 733). He also found that the claimant's attention span and concentration abilities were impaired correspondently to his overall intellectual level and that his social skills were generally appropriate (Tr. 733). Dr. Graybill stated that while the claimant was capable of handling his own benefits, he should not due to his history of polysubstance dependence (Tr. 733).

State reviewing physician Dr. Tom Shadid reviewed the claimant's records on March 4, 2010 (Tr. 737-51). He concluded on the Psychiatric Review Technique Form (PRT) that the claimant's bipolar disorder (characterized by both manic and depressive syndromes) met Listing 12.04, but that he experienced behavioral or physical changes from the regular use of substances that affect the central nervous system under Listing

12.09 (Tr. 737, 740, 745). He further concluded that the claimant had moderate limitations in activities of daily living and in maintaining concentration, persistence, or pace; marked limitations in maintaining social functioning; and experienced three episodes of decompensation, based on the claimant's medical records (Tr. 747). Dr. Shadid stated that the claimant's drug and alcohol abuse was primary and exacerbated his psychological symptoms, which resolved well during abstinence; thus, he opined such abuse was material (Tr. 749).

In response to a request by the ALJ, Dr. Barbara Felkins completed a "Medical Interrogatory – Mental impairment(s) – Adult" on December 10, 2011 (Tr. 810-15). Dr. Felkins noted the claimant's impairments included polysubstance abuse (methamphetamine, alcohol, marijuana, cocaine, and various street pills); major depression; posttraumatic stress disorder; history of attention deficit hyperactivity disorder; and learning disabilities (Tr. 810). She found that when the claimant was using drugs, he had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace; and marked episodes of decompensation; however, she found the claimant had mild limitations in these areas when he was not using drugs (Tr. 811). Dr. Felkins further found the claimant had no limitations in his activities of daily living, whether he was using drugs or not (Tr. 811). She concluded that the claimant's drug and alcohol abuse was material and stated that the claimant's primary problem was "clearly" longstanding, continuous abuse of drugs and alcohol (Tr. 812, 814).

"An individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). When drug abuse is present, the ALJ's task is to determine first whether the claimant is disabled. If the ALJ finds that the claimant is disabled, then the ALJ determines whether the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). The issue to be resolved is whether the claimant would still be found disabled if the claimant stopped using drugs. 20 C.F.R. § 416.935(b). To resolve this issue, the ALJ evaluates which of the claimant's limitations "would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2). If the remaining limitations are deemed not disabling, then the claimant's drug addiction or alcoholism is considered a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(i). Conversely, if the remaining limitations are deemed disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(ii).

Soc. Sec. Rul. 13-02p sets out further guidance regarding the process for analyzing whether DAA is a material contributing factor. Soc. Sec. Rul. 13-02p, 2013 WL 621536 (Feb. 20, 2013). "[We] must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA . . . We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that

the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." *Id.*, 2013 WL 621536, at *9.

The ALJ first erred at step two upon factoring out the claimant's substance abuse. Apart from substance abuse, the ALJ found that the claimant had no severe impairments through June 30, 2011, after initially determining that the claimant *did* have the severe mental impairments of affective disorders and anxiety-related disorders (Tr. 19-20). Although the claimant *does* have the burden of proof at step two to show that he has an impairment severe enough to interfere with the ability to work, *see Bowen v. Yuckert*, 482 U.S. 137, 146-147 (1987), the burden at step two is a *de minimis* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). In this regard, the ALJ himself even acknowledged these were severe impairments at the beginning of his decision, and further discussed evidence related to different diagnoses of his mental impairments. These diagnoses were separate and apart from any substance abuse disorder, and were more than sufficient to carry this *de minimis* burden. The ALJ was not entitled to disregard his original finding (not to mention the significant evidence in the record) without explanation. *See, Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.").

Additionally, the ALJ gave substantial weight to the opinion of state agency psychologist Dr. Shahid and to the opinion of reviewing physician Dr. Felkins for the period of time prior to July 1, 2011 (Tr. 22-23). In concluding that the claimant's DAA was a material contributing factor to disability, Dr. Shadid relied exclusively on the claimant's improvement after his inpatient hospitalizations at Cedar Ridge and Rolling Hills (Tr. 749). Similarly, Dr. Felkins also noted the claimant's improvement with hospitalizations in support of her materiality finding, specifically referencing only the inpatient hospitalization at Carl Albert Community Mental Health Center (Tr. 814). Reliance on improvement while in the highly structured environment of a hospitalized stay, however, is improper. Where "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. . . . In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder – with or without treatment for DAA – is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention." Soc. Sec. Rul. 13-02p, 2013 WL 621536, at *12-13. The ALJ also failed to mention that the claimant's drug use was noted by Dr. McCaffrey to be the claimant's attempt to self-medicate his depressive symptoms, which constitutes improper picking and choosing among the medical evidence (Tr. 327). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other

evidence."), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position while ignoring other parts, is improper.") [citations omitted]. *See also* Soc. Sec. Rul. 13-02p, 2013 WL 621536, at *9 ("[W]e must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) *would not be disabled* in the absence of DAA.") [emphasis added].

Furthermore, the ALJ failed to mention that the claimant was diagnosed with *both* a substance abuse disorder and at least one co-occurring mental disorder upon discharge in each of the hospital discharge summaries (Tr. 244, 249, 484, 717, 768). "When it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *McGoffin v. Barnhart,* 288 F.3d 1248, 1253 (10th Cir. 2002) [internal quotations omitted]. Thus, "the agency directed that if the effect of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination." *Id.* [emphasis in the original]. The ALJ should have considered this in light of the numerous diagnoses of a substance abuse disorder and co-occurring mental impairments. *See Bayer v. Astrue*, 2010 WL 1348416, at *7 (D. Colo. Mar. 31, 2010) (stating that "when from the record it is not possible to separate the mental restrictions and limitations imposed by substance abuse and the other mental disorders shown by the record" a finding that substance abuse is not a contributing factor material to the disability determination is required), *citing McGoffin*, 288 F.3d at 1253.

As a final matter, the Court finds that the ALJ failed to point to any evidence in the record that explains the significance of June 30, 2011 as it relates to the materiality of the claimant's DAA. Instead of linking the date to facts substantiated by the record, the ALJ arbitrarily chose a date, and his random choice cannot substitute for substantial evidence. *See, e. g., Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989) ("The determination of whether substantial evidence supports the Secretary's decision is not simply a 'quantitative exercise,' for evidence is not substantial . . . if it really constitutes mere conclusion."), *citing Fulton v. Heckler,* 760 F.2d 1052, 1055 (10th Cir. 1985) and *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir. 1985). Because the ALJ failed to properly analyze the materiality of the claimant's substance abuse, the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical and other source evidence of record.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**